ALLEN, Acting Chief Judge.
The appellants, plaintiffs below, were owners of a tract of land in Putnam County and leased the same, under a mining lease, to the appellee, who was the defendant below. The plaintiffs appeal a final decree in equity denying their prayer for reformation of the lease.
The lease in question resulted from successful efforts by the appellee to locate a *886 sand deposit on the plaintiffs’ tract and to interest a third party in mining it. While the appellee originally was named lessee, as contemplated by the parties, he received compensation for his efforts by assigning the lease to the third party for a profit. The main controversy in this case was caused by a provision in the lease which defined a cubic yard of sand as being 3,000 pounds, while the appellants contend that in the sand trade a cubic yard is generally considered as 2,700 pounds.
The able circuit judge who heard this case below discussed the pertinent facts in his final decree which, we think, renders it unnecessary to delineate any further facts in this opinion. The final decree is as follows:

“FINAL DECREE

“The above styled and numbered cause having come on for final hearing on December 14, 1962, on the argument of counsel for the plaintiffs, B. J. Alderman and Edna W. Alderman, his wife, and for the defendant, Lawrence, P. Clark, and the Court, having considered the pleadings, depositions and exhibits filed in the cause, and the testimony of the various witnesses adduced at the hearing of December 12, 1961, and transcribed, together with the arguments of counsel and memorandum briefs filed by counsel for the parties, finds as follows:
“1. That the real property owned by the plaintiffs located at or near Gran-din, Putnam County, Florida, and described in the Mining Lease with option to purchase dated August 24, 1958, sought to be reformed in this action is situated in a general area in which sand is mined in quantity. The testimony of the parties and of the various witnesses indicates that one sand mine is operated at or near Grandin and other sand mines are operated at Interlachen, some six to eight miles distant. It further appears that the Keystone mine located at or near Grandin is approximately one-quarter mile from the residence of the plaintiffs.
“2. That prior to the beginning of negotiations between the plaintiffs and the defendant, the plaintiff, B. J. Alderman, had attempted to interest other persons and firms in exploring for and developing sand deposits thought to be located on his property. Alderman testified that Jack Williams had done some prospecting and that he had called Mr. Shands of Shands and Baker in an effort to interest that firm in the property.
“3. That the plaintiff, B. J. Aider-man, had numerous acquaintances with persons engaged in the sand mining and' marketing business. In addition to Jack Williams and Mr. Shands of Shands and Baker, Alderman testified at various times that he had talked with. Harry Pierce, Manager of the Kejr-stone Mine, with Arthur Chesser who-subsequently appeared as a witness and was identified as a sand dealer, with P. E. Williams who owned sand deposits at Davenport, Florida, and received a royalty for sand mined therefrom and with one Harry Litzel, who-was not identified but apparently was, engaged in the sand business. The plaintiff testified that he had conversations with several persons apparently including those named concerning the-qualifications of the defendant, Lawrence P. Clark, in matters pertaining to the discovery and development of sand deposits, although he testified that he discussed royalty payments with Jack Williams and with P. E. Williams. The testimony of the plaintiff taken as a whole indicates that he had access to-information concerning the sand mining business by the simple expedient of inquiry.
“4. That negotiations between the plaintiffs and defendant extended over a period of six to twelve months. B.y. *887 ■the testimony of the plaintiff, corroborated by that of the defendant, the initial meeting between the plaintiff, B. J. Alderman, and the defendant occurred in the latter part of 1955 and the instrument sought to be reformed was executed and dated August 24, 1956.
“5. That the plaintiff, B. J. Aider-man, during the course of negotiations repeatedly stated that he wanted 5‡ per cubic yard for sand removed from his property, and aside from colored labor furnished by the plaintiff for a disputed period of time, the defendant, Lawrence P. Clark, received no compensation from the plaintiffs for his efforts. In his testimony on December 12, 1961, as appears on page 12 of the transcript of testimony, the plaintiff stated:
“ ‘ * * * I later asked him (Note: the defendant), I wondered what his basis would be for being compensated because it had drifted on in to some time and he’d make trips up there apparently for the purpose of talking with me about it and so I finally asked him what would he want for his share, what share would he want in it. And he said for me not to worry about that, that he would get what I was asking and he would get his out of the other party.
“ ‘Q What was it that you were asking for?
“ ‘A Five cents a yard’
““On page 65 of the transcript of testimony taken on December 12, 1961, the .following testimony appears:
“ ‘THE COURT: Let me ask you this, Mr. Alderman: Didn’t you testify on direct that the defendant ■said don’t worry about his compensation, he would get it from the ■other party?
“ ‘A Yes sir, but that came rather Hate in the deal. It wasn’t at first as to just how we would set up, there wasn’t anything said but we first had to find somebody that was interested and we’d go from there. But I expected Mr. Clark to be compensated for his efforts. I didn’t think he was just playing Santa Claus to me.
“ ‘THE COURT: Well, didn’t you testify on direct that you discussed it with him about his compensation?
“ ‘A Yes sir. That was like I say rather later on in the deal.
“‘THE COURT: But he said don’t worry about that he will get his money from the other fellow.
“ ‘A Yes sir.’
“6. That the plaintiff participated in the drafting of the Mining Lease with Option to Purchase and was thoroughly familiar with the terms and conditions thereof. The plaintiff testified that:
“ ‘We read and re-read the contract all together and discussed all the different paragraphs from time to time.’
“In this connection, the testimony of the witness, J. H. Millican, Jr., attorney of the firm of Dowda and Millican, affirms that the parties spent a considerable time going over the lease item by item, redrafting, discussing and negotiating the terms and conditions thereof. He stated that he did not observe or feel that there was any conflict of interest between the parties although the only legal fees paid him were paid by the plaintiff, B. J. Alderman.
“7. That the weight of a cubic yard of sand removed from the mine subsequently located on the plaintiff’s property was never clearly established, the testimony and evidence in that regard being conflicting.
*888 “8. That the testimony adduced and evidence presented failed to establish any fraud, duress, undue influence, mistake or inequitable conduct such as would justify interference by a Court of equity or support equitable relief. To the contrary, the testimony of the parties taken as a whole reflects that throughout the negotiations and formation of the lease, the parties dealt at arm’s length. There is no evidence that a fiduciary relationship existed between the plaintiffs and defendant or that the plaintiffs had a right to repose their trust and confidence in the defendant other than the testimony of the plaintiff, B. J. Alderman, as to his subjective attitude toward this relationship. The testimony of the defendant, Lawrence P. Clark, is unequivocal that he did not regard himself as the agent or in a fiduciary capacity. The testimony regarding the discussions on compensation to the defendant, Lawrence P. Clark, quoted above corroborate this testimony by the defendant.
“9. That the counterclaim filed by the defendant, Lawrence P. Clark, is not supported by any evidence or testimony.
“By virtue of the foregoing facts, it is upon consideration
“ORDERED AND DECREED that the plaintiffs, B. J. Alderman and Edna W. Alderman, his wife, are not entitled to reformation of the Mining Lease with Option to Purchase, dated August 24, 1956, or other equitable relief, and the relief sought by the plaintiffs in and through their complaint be, and the same is hereby denied, and it is further
“ORDERED AND DECREED that the defendant, Lawrence P. Clark, is not entitled to recover the sums alleged to be due him in the counterclaim, and the counterclaim asserted by the defendant be, and it is hereby denied.”
We have read the briefs of the parties as well as the evidence adduced below, and find evidentiary support for the lower court’s decree in this case.
The decree comes to us with a presumption of correctness and we must accept the factual determination of the lower court if found to be based upon sufficient evidence in support thereof, which we so-find.
Affirmed.
KANNER, (Ret), J., and DOWNEY, JAMES C., Associate Judge, concur.